**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| C2 ASSOCIATES BUSINESS STRATEGY AND DEVELOPMENT LLC<br><br>Plaintiff and Counter-Defendant,<br><br>v.<br><br>L3HARRIS TECHNOLOGIES INTEGRATED SYSTEMS L.P.<br><br>Defendant and Counter-Plaintiff. | Civil Action No. 6:23-cv-00762-ADA-DTG |

**L3HARRIS TECHNOLOGIES INTEGRATED SYSTEMS L.P.'S
MOTION FOR RECONSIDERATION**

Pursuant to Fed. R. Civ. P. 59, Defendant/Counter-Plaintiff L3Harris Technologies Integrated Systems L.P. ("L3Harris") hereby files its Motion for Reconsideration of the Court's February 10, 2025 Order Adopting In Part and Rejecting In Part Magistrate Judge's Report and Recommendation (ECF No. 71) ("Order").[1]

## I. INTRODUCTION

This is a breach of contract dispute arising from L3Harris' refusal to pay C2 Associates Business Strategy and Development LLC ("C2") success fees allegedly due under a services agreement, effective May 1, 2018 (the "Success Fee Agreement") that was terminated in December 2018, years before the events giving rise to the alleged breaches. The parties' relationship and obligations are set forth in the terms of the Success Fee Agreement, including Sections 1.0, 2.1, and 3.5, which govern the services, compensation, and termination mechanics of the contract, respectively. On August 30, 2024, L3Harris filed a Motion for Summary Judgment

[1] Counsel for L3Harris conferred with counsel for C2 via email regarding L3Harris' intention to ask for reconsideration. C2 opposes the relief requested herein.

(ECF No. 56) ("MSJ") requesting, among other things, that the Court grant summary judgment in favor of L3Harris on C2's breach of contract and declaratory judgment claims. In the Order, the Court determined that granting summary judgment would be premature until the Court understands whether C2 had the opportunity to perform the services it failed to provide.

L3Harris respectfully moves for reconsideration of the Order because the Success Fee Agreement's termination provision (i.e., Section 3.5), which was not discussed in the Order, addresses the specific situation where the parties' contractual relationship ends before the services may be performed. The termination provision is clear that L3Harris is only required to pay success fees due at the time of termination. C2, therefore, assumed the risk that it would not have the opportunity to provide the services defined in the Statement of Work ("SOW") and would not be entitled to any success fees, even if L3Harris eventually was awarded contracts that C2 theoretically could have supported if the Success Fee Agreement had not been terminated. Here, there is no dispute that L3Harris did not owe C2 any success fees in connection with the two prime contracts at issue (i.e., the C-130 Domestic Maintenance Contract and C-130 FMS Maintenance Contract)[2] at the time of termination. As such, the underlying reason for why C2 did not perform all of the services is irrelevant to the contract interpretation issue before the Court. For these reasons, and as more fully explained below, the Court should reconsider the Order and grant summary judgment for L3Harris.

---

[2] "C-130 Domestic Maintenance Contract" refers to Contract No. FA8504-21-D-0001 that the U.S. Air Force awarded L3Harris on November 30, 2020, and is a prime contract for the provision of C-130 aircraft maintenance services.

"C-130 FMS Maintenance Contract" refers to Contract No. FA8553-22-D-0001 that the U.S. Air Force awarded to L3Harris on January 14, 2022, and is a foreign military sales ("FMS") contract for the provision of C-130 aircraft maintenance services for the country of Tunisia.

## II. BACKGROUND

In its MSJ, L3Harris asked the Court to interpret the express language of Sections 1.0, 2.1, and 3.5 of the Success Fee Agreement that governs the services, compensation, and termination provisions, respectively. *See, e.g.*, MSJ at 17 ("Section 3.5,[3] read together with Sections 1.0 and 2.1, establishes that C2 is only entitled to a contingent success fee if it performs, at a minimum, all of the services identified in the SOW prior to termination."); *see also* L3Harris' Reply In Support of MSJ (ECF No. 61) ("Reply") at 7 ("Whether C2 performed some of the services or not in no way precludes the Court from granting summary judgment on this issue."). In its MSJ, L3Harris also proffered the contract interpretation that under the termination provision, "C2 assumed the risk that it would not be paid a contingent success fee in the event C2 did not perform all of the services identified under the Success Fee Agreement with respect to a particular contract opportunity prior to termination." MSJ at 18. C2 never rebutted L3Harris' proffered interpretation of the termination provision. *See generally* C2's Resp. in Opp'n (ECF No. 60) ("Opposition").

On December 20, 2024, the Magistrate Judge submitted to the Court a Report and Recommendation (ECF No. 65) on L3Harris' MSJ, C2's Opposition, and L3Harris' Reply, which recommended, among other things, that the Court grant summary judgment in favor of L3Harris on C2's breach of contract claim and request for declaratory judgment. C2 filed its Objections to

---

[3] Section 3.5 provides, in full:

> Either Party may terminate, this Agreement without further liability to the other Party by giving (30) days prior written notice of such termination. In the event of termination, or in the event this Agreement is not extended or renewed, Contractor shall retain the right to all compensation due for services performed as specified in paragraph 2.1 up to the date of termination.

MSJ Ex. 1 (ECF No. 56-2) at 3.

the Report and Recommendation on January 17, 2025 (ECF No. 67) ("Objections"), and L3Harris filed its Response to C2's Objections on January 31, 2025 (ECF No. 69) ("Response"). In its Response, L3Harris stated the following:

> [A]ccording the plain language of the services, compensation, and termination provisions of the Agreement (i.e., Sections 1.0, 2.1, and 3.5), C2 assumed the risk that it would not be paid a contingent success fee in the event that C2 did not perform all of the services identified in the SOW in connection with a particular contract opportunity prior to termination. The termination provision, which C2 drafted, was designed to protect C2 only if C2 performed all of the services required by the SOW, but L3Harris terminated the Agreement prior to the award of a contract opportunity by an L3Harris customer.

L3Harris' Resp. at 10.

In the February 10, 2025 Order, the Court declined to adopt the portion of the Magistrate Judge's Report and Recommendation relating to C2's breach of contract and declaratory judgment claims. Upon considering C2's argument that some of the services defined in the SOW "could only be performed at a later stage," the Court: (a) concluded that the "Magistrate Judge's finding that C2 is not entitled to the contingent success fee . . . is premature"; and (b) reasoned that "the Court cannot conclude that C2 failed to use its best efforts in performing all the services defined in the SOW because the Court cannot determine whether C2 was presented with the opportunity to do so." Order at 5–6. Although the Court found that "L3Harris terminated the parties' relationship under the Success Fee Agreement," the Order did not address the significance of the termination provision or how that provision impacts C2's entitlement to any success fees in the event of a termination. *Id.* at 6.

## III. <u>LEGAL STANDARD</u>

A motion for reconsideration made pursuant to Fed. R. Civ. P. 59 is appropriate when one of the following criteria is satisfied: "(1) the motion is justified by an intervening change in the

controlling law; (2) the motion presents newly discovered or previously unavailable evidence; (3) the motion is necessary to correct a manifest error of fact or law; or (4) the motion is necessary to prevent manifest injustice." *Reeves v. Wells Fargo Bank, N.A.*, No. EP-13-CV-318-DCG, 2014 WL 12489984, at *1 (W.D. Tex. Apr. 10, 2014) (citing *Brown v. Miss. Co–op. Extension Serv.*, 89 F. App'x 437 (5th Cir. 2004)). With regard to interpreting contracts, it is well established that "[c]ourts should consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Kern v. Sitel Corp.*, 517 F.3d 306, 309 (5th Cir. 2008) (applying Texas law). To that end, "no single provision taken alone [should] be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.*

## IV. THE COURT SHOULD RECONSIDER ITS DETERMINATION THAT SUMMARY JUDGMENT IS PREMATURE

L3Harris' Motion for Reconsideration is necessary to correct an error of law because the Court did not address the termination provision (i.e., Section 3.5) of the Success Fee Agreement in denying summary judgment on C2's breach of contract and declaratory judgment claims. The Court determined that summary judgment is premature because there exists a disputed material fact as to whether C2 had the opportunity to perform all of the services with the "as required' qualifier under the SOW pursuant to the services provision (i.e., Section 1.0) of the Success Fee Agreement. The Court, however, did not address the relationship between Section 1.0 (services), Section 2.1 (compensation), and Section 3.5 (termination), and how the termination provision impacts C2's entitlement to any success fee payments in the event of a termination. Specifically, the Order provides as follows:

> As a result, the Court cannot conclude that C2 failed to use its best efforts in performing all the services defined in the SOW because the Court cannot determine whether C2 was presented with the opportunity to do so. *See id.* ("If L3Harris terminated C2's

> participation in a business capture effort, as it did here, then certain steps in the "C2 Strategic Process" or the "C2 Funding Capture Process" may never be reached.").

Order at 6.

The underlying reasons for why C2 did not perform the required services, or even whether C2 had the opportunity to perform the services prior to termination, are not material facts in dispute for purposes of the MSJ. The termination provision contemplates that either party may terminate the contract at any time during performance "without further liability"; therefore, whether C2 was "presented with the opportunity to perform all the services defined in the SOW" is not relevant to the Court's analysis. *Id.*

Section 3.5 also specifically addresses what compensation, if any, C2 would be entitled to upon termination. Section 3.5 is clear that C2 is only entitled to payment of a contingent success fee if any such fee is due at the time of termination. As such, what controls L3Harris' obligation to pay C2 any success fees (and, therefore, whether summary judgment is appropriate) is: (a) whether C2 performed the services required in the SOW, including, at a minimum, those without an "as required" qualifier, in connection with a particular government contract opportunity prior to termination; and (b) whether any payment was due to C2 as a result of those services at the time of termination.

Here, assuming arguendo that C2 did not have to perform the services with the "as required" qualifier (it did), it is undisputed that C2 did not perform at least three of the services without the "as required" qualifier in connection with the two prime contracts for which C2 seeks

payment.[4] No payment therefore was due to C2 at the time of termination.[5] Indeed, not only had the C-130 Domestic Maintenance Contract and the C-130 FMS Maintenance Contract not been awarded, the U.S. Government had not even released the solicitations for either contract opportunity at the time of termination. *See* MSJ at 6–7; C2's Opp'n at 13–14.

The process of successfully winning a government contract oftentimes is long.[6] As explained in L3Harris' MSJ, the Success Fee Agreement contemplated a variety of contract opportunities for which C2 potentially could have performed business development and capture services, but such performance was never guaranteed and there was no certainty that C2 would have the opportunity to provide any of the services in support of any particular contract opportunity (e.g., the C-130 Domestic Maintenance Contract or C-130 FMS Maintenance Contract). *See* MSJ

---

4 At the time of termination, C2 had not performed, at least, the following three services that did not include the "as required" qualifier":

- Enable funding authorization, funding obligation, contract vehicle and contract award.
- Strategically develop a funding capture campaign with multiple options/paths; including, congressional campaign, reprogramming, year-end, National Guard Reserve and Equipment Account (NGREA), and POM.
- Develop Congressional White Paper Requests for introduction, coordination and processing from target TAG's-to-Director ANG concurrent with target TAG's through associated congressional members to budget execution, including continuous ANG LL and NGAUS coordination.

*See* MSJ at 8; *see also* C2's Objs. at 15.

5 No payment was due to C2 at the time of termination because L3Harris also had not received any invoice payment from its government customer. *See* MSJ Ex. 1, at 2 ("[C2] payments are due within 30 days of receipt of invoice payments from the L3 Aerospace Services customer to L3 Aerospace Services").

6 The C-130 Maintenance Contract was not awarded until November 2020 and the C-130 FMS Maintenance Contract was not awarded until January 2022. *See* MSJ at 6–7.

at 3. In fact, if the issue of whether C2 had the opportunity to perform the services prior to termination were relevant to the Court's analysis, then C2 theoretically would be able to seek success fees for all of time for any of the contemplated contract opportunities that L3Harris might eventually win, even if C2 never performed any services in connection with that contract opportunity. Such a result would constitute an unreasonable interpretation of the Success Fee Agreement.

## V. <u>CONCLUSION</u>

The plain language of the Success Fee Agreement specifically prescribes the circumstances in which C2 is entitled to payment of success fees, if any, following termination and forecloses C2's entitlement to payment of any success fees under the circumstances. L3Harris, therefore, respectfully requests that the Court reconsider the Order and grant L3Harris' Motion.

Respectfully submitted this 25th day of February, 2025.

*s/Gale R. Monahan*
Gale R. Monahan (TX Bar No. 24124749)
Victor C. Johnson (TX Bar No. 24029640)
Dentons US LLP
100 Crescent Court, Suite 900
Dallas, TX 75201
Tel**:** 214-259-0900
Fax**:** 214-259-0910
gale.monahan@dentons.com
victor.johnson@dentons.com

Sandra Sok (*pro hac vice*)
Dentons US LLP
1400 Wewatta Street, Suite 700
Denver, CO 80202
Tel**:** 303-634-4384
Fax**:** 303-634-4400
sandra.sok@dentons.com

COUNSEL FOR DEFENDANT/COUNTER-PLAINTIFF L3HARRIS TECHNOLOGIES INTEGRATED SYSTEMS L.P.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above was filed via the Court's ECF filing system on the 25th day of February, 2025, and served on the following:

Benjamin L. Bernell
PILLSBURY WINTHROP SHAW PITTMAN LLP
401 Congress Avenue, Suite 1700
Austin, TX 78701
ben.bernell@pillsburylaw.com

Matthew J. MacLean (*pro hac vice*)
Alex G. Anderson (*pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, DC 20036
matthew.maclean@pillsburylaw.com
alex.anderson@pillsburylaw.com

*s/Gale R. Monahan*

129412008\V-1